**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MONICE LYNN DORSETTE,

            *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

            *Defendant*.

_____/

CASE NO.: 2:17-cv-11299

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 13, 15)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Monice Lynn Dorsett is not disabled. Accordingly, **IT IS RECOMMENDED** that Dorsette's Motion for Summary Judgment, (Doc. 13), be **DENIED**, the Commissioner's Motion, (Doc. 15), be **GRANTED**, and this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Monice Lynn Dorsette's appeal of the Commissioner's decision to cease payment of Supplemental Security Income benefits ("SSI") under 42 U.S.C. §

1

1382c(a)(3)(H). (Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 15).

Plaintiff received disability benefits for a speech and language disorder beginning in March 1999 when she was seven years old. (Tr. 67, 90). The Commissioner found her no longer eligible for SSI once evaluated under the adult disability rules. (Tr. 77-80). She appealed this determination and was again denied on reconsideration. (Tr. 81-88). Thereafter, she requested a hearing before an ALJ, (Tr. 101-04), which the ALJ dismissed after Plaintiff failed to appear, (Tr. 69-73). The Appeals Council remanded the case, and thereafter Plaintiff attended an administrative hearing on May 5, 2016. (Tr. 34-65, 74-76). On June 30, 2016, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 15-33). The Appeals Council denied review on February 24, 2017. (Tr. 1-6). On April 25, 2017, Plaintiff filed the instant case. (Doc. 1).

###    B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 20). At Step One, the ALJ noted that Plaintiff attained the age of 18 on October 25, 2010, and was eligible for SSI as a child in the month preceding that date, but that she was informed on November 30, 2011 that she was found no longer disabled "based on a redetermination of disability under the rules for adults who file new applications." (Tr. 20). At Step Two, the ALJ concluded that as of November 30, 2011 the following impairments qualified as severe: schizoaffective disorder, depression, mild intellectual disability, intermittent explosive disorder, and anxiety. (Tr. 20-21). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-23). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except:

> the claimant would be limited to simple, routine, repetitive tasks without strict production demands. The claimant would be limited to occasional interaction with coworkers and the general public.

(Tr. 23). At Step Four, the ALJ noted the absence of past relevant work. (Tr. 25). Proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24).

### E.  Administrative Record

#### 1.  Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.  Application Reports and Administrative Hearing

##### i.  Third-Party Function Report

A Third-Party Function Report dated September 30, 2011 and filled out by Valencia Dorsette, Plaintiff's mother, appears in the administrative record. (Tr. 307-14). Valencia notes that Plaintiff "is learning disabled." (Tr. 307). According to Valencia, Plaintiff began each day by showering and feeding herself, then went to school, took care of her daughter, visited with friends on occasion, watched television, and listened to music. (Tr. 308). She required help to care for her daughter. (*Id.*). She sometimes needed assistance in caring for her hair. (Tr. 309). Though she rarely prepared meals, she could make sandwiches and heat up frozen dinners about three to four times a week. (*Id.*). She participated in various household chores, though Valencia indicated "I have to explain why [they] need[] to be done and tell her to do [them] more than once." (*Id.*).

Although Plaintiff did not drive, she remained able to walk and use public transportation. (Tr. 310). She shopped for food, clothes, and like items in stores on a weekly basis. (*Id.*). But she was not able to pay bills, count change, handle a savings account, or use a checkbook/money orders. (*Id.*). Her hobbies involved listening to music, talking on the phone, and spending time with friends and family, which she did on a frequent basis,

although "[s]he has become very easily angered and yells a lot." (Tr. 311). She did not always feel sociable. (Tr. 312). Prompted to supply information about Plaintiff's abilities, Valencia marked issues with talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id.*). "She is learning disabled [and] she sometimes get[s] angry and it affects whatever she is doing at that time." (*Id.*). She could pay attention "for as long as it takes," though "she is not able to retain a lot of information." (*Id.*). She could not follow written instructions because she "does not read well," but she was able to follow spoken instructions "up to the point of what she can remember." (*Id.*). She did not handle changes in routine well. (Tr. 313).

### ii.        Plaintiff's Testimony at the Administrative Hearing

As the hearing began, Plaintiff's attorney clarified the issues in the instant case, noting "there is kind of a question in the record as to some of her diagnoses." (Tr. 38). Plaintiff lived in a two-family flat with her daughter, her friend, and her friend's mother and child. (Tr. 41). She could take the bus to get around, though she typically rode with her friend. (Tr. 42). She finished schooling up to the eleventh grade. (*Id.*). While in school, she was placed in special education classes. (Tr. 43). She could read and write simple words. (*Id.*). She felt she was disabled because "I can't read or spell." (Tr. 44). In addition, she took medication for a cyst in her stomach and had complained to her doctor about pain and numbness in her arm and arm. (Tr. 44-45). Sitting at the hearing, she ranked her pain a six in severity out of ten. (Tr. 46).

Each day, Plaintiff played with her daughter and watched television. (Tr. 47). She remained able to prepare her daughter's meals and dress her. (*Id.*). Plaintiff also performed

various chores around the house, such as tidying up the floor and microwave cooking. (Tr. 47). She had no issues with personal care, though she did not shower or take a bath every day. (Tr. 48). Due to sleep apnea, she had trouble sleeping. (*Id.*). She could lift her thirty-nine pound daughter up on occasion. (Tr. 49). Others needed to remind her to bathe and change her clothes "[b]ecause I be forgetting, and I play, and watch TV." (Tr. 52). "Every day, all day" she experienced aural and visual hallucinations. (Tr. 53-54). "I see people that's in the ground." (Tr. 54). She did not take medication for this condition because "my preacher say that's a gift from God." (Tr. 57). Asked to describe her depression symptoms with specificity, Plaintiff said "I get angry a lot" because "whatever happens to me, it keep playing back and forth in my head." (Tr. 56). She did not like to be around other people "[w]hen I have my days," which occurred about three times a week. (Tr. 57). "Sometime I just want to be left alone. I just want to be around my daughter, and my friend and her daughter. I don't like being around lot of people, or too much noise." (Tr. 58).

### iii.  The VE's Testimony at the Administrative Hearing

The ALJ's first hypothetical posed an individual "able to work at . . . all levels of exertion, but is limited to simple, routine, repetitive tasks without strict production demands, and occasional interaction with coworkers and the general public. Would the hypothetical person have any jobs?" (Tr. 60). The VE indicated that "unskilled work across several exertional levels" would exist for such an individual, including: "office cleaner" (more than 200,000 jobs in the national economy); "hand packager" (more than 100,000 jobs in the national economy); and "bunch hand" (more than 200,000 jobs in the national economy). (Tr. 60-61).

8

The second hypothetical was the "same as hypothetical one, but the person would also have the ability to change from a standing to a seated position, or vice versa, for one to two minutes every hour, two hours without interference with work products." (Tr. 61). Such a person, suggested the VE, could perform hand packager and bunch hand jobs as before, but could no longer perform the office cleaner job. (*Id.*). Other examples existed as well, including: "small products assembler" (more than 100,000 jobs in the national economy") and "security monitor" (more than 120,000 jobs in the national economy). (*Id.*).

The ALJ's third hypothetical was the "same as hypothetical two, but the hypothetical person would be off task 20 percent of the work day, excluding normal breaks, due to lack of concentration, and the effects of medication. Would the hypothetical person be able to perform any of the jobs that you've indicated?" (Tr. 62). At this, the VE noted that such an individual could not maintain competitive full-time employment. (*Id.*).

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of

opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's

10

impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

11

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR

12

96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Pursuant to 42 U.S.C. § 1382c(a)(3)(H), "[i]f an individual is eligible for [SSI] by reason of disability for the month preceding the month in which the individual attains the age of 18 years, the Commissioner shall redetermine such eligibility . . . by applying the criteria used in determining initial eligibility for individuals who are age 18 or older; . . ." Cessation of benefits on this ground does not require "substantial evidence" showing that "there has been . . . medical improvement in the individual's impairment or combination of impairments" such that "the individual is now able to engage in substantial gainful activity; . . ." *Id.* § 1382c(a)(3)(H), (a)(4)(A). In other words, the Commissioner evaluates the question of a claimant's disability afresh, without reference to any prior finding on the issue. It is this evaluation—and subsequent adverse disability determination—from which Plaintiff now appeals.

Plaintiff raises three arguments in the instant Motion: (1) the ALJ failed to comply with her duty under SSR 96-6p, 1996 WL 374180 (July 2, 1996), to obtain an updated medical opinion from a consultative examiner; (2) the ALJ played doctor because her RFC assessment did not conform directly to any medical opinion of record; (3) the ALJ improperly evaluated Plaintiff's mental health conditions, in violation of SSR 96-8p, 1996 WL 374184 (July 2, 1996), and SSR 85-15, 1985 WL 56857 (1985). I address each argument in turn.

### 1.    Duty To Obtain an Updated Medical Opinion

Plaintiff first argues that SSR 96-6p required the ALJ to solicit an updated opinion on medical equivalence because Plaintiff's most recent consultative examination occurred

14

on October 31, 2011, and "[s]ince that time, many pages of new medical reports were added to the record" and "she has since been provided with different diagnoses that conflict with the previous" opinion on equivalence. (Doc. 13 at ID 641-42) (referring broadly to exhibits 6F-11F and 14F-17F (Tr. 458-510, 519-40)).[1]  This argument is unavailing.

The Sixth Circuit views SSR 96-6p as imposing upon the ALJ a duty to obtain an updated medical opinion on equivalence "when either (1) there is evidence of symptoms, signs and findings that suggest to the ALJ or appeals Council that the applicant's condition may be equivalent to the listings; or (2) when additional medical evidence is received that 'in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding' that the impairment does not equal the listings." *Kelly ex rel. Hollowell v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009). The rationale behind its interpretation is simple:

> There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

*Id.* at 831.

As Plaintiff appears to acknowledge, the ALJ's analysis shows she considered the evidence post-dating Plaintiff's October 2011 consultative examination and found it

---

[1] Exhibits 18F and 19F, (Tr. 541-69), were not before the ALJ when she rendered the decision at issue. The ALJ's inability to review such records cannot impugn her conclusions for purposes of a Sentence Four remand under 42 U.S.C. § 405(g), which is what Plaintiff seeks. *See* § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

wanting. *See* (Doc. 13 at ID 642) ("As the ALJ herself recognized, the evidence documents that Plaintiff has numerous severe impairments including schizoaffective disorder, depression, mild intellectual disability, intermittent explosive disorder and anxiety . . . ."). *See generally* (Tr. 18, 21, 24-25) (discussing the new evidence and expressly citing exhibits 6F, 7F, 9F, 10F, 11F, 15F, 16F, and 17F).[2] Fresh diagnoses certainly carry the potential to change aspects of a consultant's analysis, but Plaintiff fails to articulate with any specificity exactly why the evidence at issue here would have changed the consultative examiner's opinion on equivalence as to any particular listing, and this proves fatal to her argument. *Accord, e.g.*, *Harper v. Comm'r of Soc. Sec.*, No. 15-CV-13971, 2017 WL 2242510, at *4 (E.D. Mich. May 23, 2017) ("Sixth Circuit precedent places a more onerous burden on the Plaintiff to show the need for an updated medical expert opinion."); *Freeman v. Comm'r of Soc. Sec.*, No. 14-CV-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015) ("Plaintiff argues that new evidence showed that his impairments were worse, yet he fails to identify evidence that would support a finding that Plaintiff meets or equals a listing. Neither does the ALJ's decision indicate that the ALJ believed new evidence may suggest that Plaintiff's condition equaled the severity of any impairment in the Listing of Impairments."); *Lance v. Astrue*, No. 3:07-CV-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008) ("[SSR 96-6p] accord[s] an ALJ broad discretion in determining whether to consult with a medical expert, . . . The ALJ based his findings on a thorough analysis of

---

[2] The only new exhibits the ALJ fails to mention are exhibits 8F and 14F. (Tr. 476-84, 519-26). These exhibits, however, pertain solely to Plaintiff's past pregnancy, and are therefore immaterial to any conditions she alleges impose disabling limitations.

the medical evidence, including reports and treatment notes from numerous medical professionals. This evidence was adequate and supported the ALJ's decision."). Put another way, the fact that non-acceptable medical sources[3] diagnosed Plaintiff with new conditions says nothing about the severity of those conditions, or the limitations they would impose. *See* 20 C.F.R. § 404.1527 ("Medical opinions are statements from *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), . . ." (emphasis added)); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Plaintiff carries the burden at Step Three, and she has failed to meet it here. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

For these reasons, the Court should reject Plaintiff's argument on this ground.

## 2.    Failure To Rely on Medical Sources of Record

Plaintiff next avers the ALJ played doctor in crafting her RFC, reasoning that because "the ALJ only gives partial weight to the opinion of the consultative examiner and the State agency's psychological consultant," and Plaintiff "has had no treating medical RFC," the ALJ's conclusions were without support in the record. (Doc. 13 at ID 644). Again, Plaintiff fails to persuade me that the ALJ erred in a manner that deprived her findings of support from substantial evidence.

---

[3] As the Commissioner notes, the post-2011 diagnoses to which Plaintiff refers were not rendered by a physician, but rather various other sources: an MA, LLP, (Tr. 529, 532), and a social worker, (Tr. 536-40). Neither such source is an "acceptable" medical source.

Courts in the Sixth Circuit have repeatedly rejected the very argument Plaintiff raises here. *E.g.*, *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719,728 (6th Cir. 2013) ("[T]he Commissioner has the final responsibility for deciding an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the [medical] source the authority to make the determination or decision about whether an individual is under a disability and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996))); *Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-13032, 2017 WL 4985644, at *7 (E.D. Mich. July 26, 2017), *R. & R. adopted*, No. 16-13032, 2017 WL 4296609 (E.D. Mich. Sept. 28, 2017) ("[A]t all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible."); *cf. Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five.").

That the RFC at issue does not precisely mirror the limitations suggested by evidence in the record is of no moment—"[i]nstead, the ALJ's RFC finding must be supported by substantial evidence, and thus must be consistent with the record as a whole." *Wagner v. Comm'r of Soc. Sec.*, No. 15-11553, 2016 WL 1729553, at *12 (E.D. Mich. Mar. 22, 2016), *R. & R. adopted,* No. 15-11553, 2016 WL 1721049 (E.D. Mich. Apr. 29,

18

2016). And as I explain at some length in the following section, the ALJ's mental-health findings are indeed supported by substantial evidence.

### 3.      Lack of Support for Plaintiff's Mental RFC

Plaintiff's third and final argument suggests that the ALJ's RFC assessment "does not consider the impact of" her mental impairments "on functional ability as required by" SSR 96-8p and SSR 85-15. (Doc. 13 at ID 645). In her view, "[n]owhere in the ALJ's decision does the ALJ specifically address Plaintiff's ability to understand, carry out and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision; and deal with changes in a routine work setting. The ALJ's RFC merely states that Plaintiff's interactions with coworkers or the general public must be limited to 'occasional.'" (*Id.* at ID 646). Again, the ALJ's discussion and corresponding record evidence disagree with Plaintiff's contentions.

SSR 96-8p outlines work-related mental activities required in competitive work environments as "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. SSR 85-15 echoes this language. *Id.* at *4. Contrary to Plaintiff's lamentations, however, the ALJ expressly discussed these factors. For instance, she limited Plaintiff to "simple work" due to evidence she had "difficulty concentration [sic]," (Tr. 24), and to "occasional interaction with coworkers and the general public" based on "the medical record and the claimant's testimony regarding her difficulty interacting with others," (Tr. 24-25). Earlier in her opinion, she grappled directly with Plaintiff's allegations of difficulty concentrating

and controlling her anger. (Tr. 23). Relatedly, the ALJ partially discounted Plaintiff's credibility as to the severity of her mental-health symptoms, reasoning that Plaintiff could use public transportation, (Tr. 21, 310), care for her daughter, (Tr. 21, 47, 453-54), complete chores, (Tr. 21-23, 47, 307-08, 454, 456), socialize with family and friends, (Tr. 21, 57-58, 453, 456). *See* (Tr. 25); *see also* (Tr. 25, 406, 424, 449, 454, 537-38) (lack of consistent mental health treatment or complaints); (Tr. 23, 48, 454, 511, 538) (no problems with personal care); (Tr. 23, 310, 454) (ability to go shopping). Plaintiff does not challenge the ALJ's analysis, and thereby forfeits any challenge to its validity. *See generally McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))).

In any case substantial evidence bolsters the ALJ's mental-health findings, and the Court should deny Plaintiff's request for remand.

### H.     Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Dorsette's Motion for Summary Judgment, (Doc. 13), be **DENIED**, the Commissioner's Motion, (Doc. 15), be **GRANTED**, and that this case be **AFFIRMED**.

20

## III.  <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 14, 2018                S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 14, 2018                By s/Kristen Castaneda
                                    Case Manager