UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MONICE LYNN DORSETTE,<br><br>　　　　　Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant.<br>_____/ | Case No. 17-11299<br><br>SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW<br><br>U.S. MAGISTRATE JUDGE<br>PATRICIA T. MORRIS |

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [16]; SUSTAINING IN PART PLAINTIFF'S OBJECTIONS [17]; GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]; AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Monice Lynn Dorsette seeks judicial review of the decision of an Administrative Law Judge ("ALJ") denying her application for disability benefits. Plaintiff filed a Motion for Summary Judgment [Dkt. 13] on December 15, 2017. Defendant filed a Motion for Summary Judgment [15] on January 16, 2018.

On March 14, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") [16] recommending that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. Plaintiff timely filed her Objections on March 28, 2018. [17].

For the reasons stated below, the Court **ADOPTS IN PART** the Report and Recommendation [16]. Plaintiff's Objections to the Report and Recommendation [17] are **SUSTAINED IN PART**. Plaintiff's Motion for Summary Judgment [13] is

**GRANTED IN PART**. Defendant's Motion for Summary Judgment [15] is **GRANTED IN PART**. Pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

The R&R summarized the record as follows:

**A. Introduction and Procedural History**

. . .

Plaintiff received disability benefits for a speech and language disorder beginning in March 1999 when she was seven years old. (Tr. 67, 90). The Commissioner found her no longer eligible for SSI once evaluated under the adult disability rules. (Tr. 77-80). She appealed this determination and was again denied on reconsideration. (Tr. 81-88). Thereafter, she requested a hearing before an ALJ, (Tr. 101-04), which the ALJ dismissed after Plaintiff failed to appear, (Tr. 69-73). The Appeals Council remanded the case, and thereafter Plaintiff attended an administrative hearing on May 5, 2016. (Tr. 34-65, 74-76). On June 30, 2016, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 15- 33). The Appeals Council denied review on February 24, 2017. (Tr. 1-6). On April 25, 2017, Plaintiff filed the instant case. (Doc. 1).

. . .

**D. ALJ Findings**

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 20). At Step One, the ALJ noted that Plaintiff attained the age of 18 on October 25, 2010, and was eligible for SSI as a child in the month preceding that date, but that she was informed on November 30, 2011 that she was found no longer disabled "based on a redetermination of disability under the rules for adults who file new applications." (Tr. 20). At Step Two, the ALJ concluded that as of November 30, 2011 the following impairments qualified as severe: schizoaffective disorder, depression, mild

intellectual disability, intermittent explosive disorder, and anxiety. (Tr. 20-21). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-23). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except:

> the claimant would be limited to simple, routine, repetitive tasks without strict production demands. The claimant would be limited to occasional interaction with coworkers and the general public.

(Tr. 23). At Step Four, the ALJ noted the absence of past relevant work. (Tr. 25). Proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24).

E. **Administrative Record**

. . .

2. **Application Reports and Administrative Hearing**

   i. **Third Party Function Report**

A Third-Party Function Report dated September 30, 2011 and filled out by Valencia Dorsette, Plaintiff's mother, appears in the administrative record. (Tr. 307-14). Valencia notes that Plaintiff "is learning disabled." (Tr. 307). According to Valencia, Plaintiff began each day by showering and feeding herself, then went to school, took care of her daughter, visited with friends on occasion, watched television, and listened to music. (Tr. 308). She required help to care for her daughter. (*Id.*). She sometimes needed assistance in caring for her hair. (Tr. 309). Though she rarely prepared meals, she could make sandwiches and heat up frozen dinners about three to four times a week. (*Id.*). She participated in various household chores, though Valencia indicated "I have to explain why [they] need[] to be done and tell her to do [them] more than once." (*Id.*).

Although Plaintiff did not drive, she remained able to walk and use public transportation. (Tr. 310). She shopped for food, clothes, and like items in stores on a weekly basis. (*Id.*). But she was not able to pay bills, count change, handle a savings account, or use a checkbook/money orders. (*Id.*). Her hobbies involved listening to music, talking on the phone, and spending time with friends and family, which she did on a frequent basis, although "[s]he has become very easily angered and yells a lot." (Tr. 311). She did not always feel

intellectual disability, intermittent explosive disorder, and anxiety. (Tr. 20-21). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 21-23). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except:

> the claimant would be limited to simple, routine, repetitive tasks without strict production demands. The claimant would be limited to occasional interaction with coworkers and the general public.

(Tr. 23). At Step Four, the ALJ noted the absence of past relevant work. (Tr. 25). Proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 23-24).

E. **Administrative Record**

. . .

   2. **Application Reports and Administrative Hearing**

      i. **Third Party Function Report**

A Third-Party Function Report dated September 30, 2011 and filled out by Valencia Dorsette, Plaintiff's mother, appears in the administrative record. (Tr. 307-14). Valencia notes that Plaintiff "is learning disabled." (Tr. 307). According to Valencia, Plaintiff began each day by showering and feeding herself, then went to school, took care of her daughter, visited with friends on occasion, watched television, and listened to music. (Tr. 308). She required help to care for her daughter. (*Id.*). She sometimes needed assistance in caring for her hair. (Tr. 309). Though she rarely prepared meals, she could make sandwiches and heat up frozen dinners about three to four times a week. (*Id.*). She participated in various household chores, though Valencia indicated "I have to explain why [they] need[] to be done and tell her to do [them] more than once." (*Id.*).

Although Plaintiff did not drive, she remained able to walk and use public transportation. (Tr. 310). She shopped for food, clothes, and like items in stores on a weekly basis. (*Id.*). But she was not able to pay bills, count change, handle a savings account, or use a checkbook/money orders. (*Id.*). Her hobbies involved listening to music, talking on the phone, and spending time with friends and family, which she did on a frequent basis, although "[s]he has become very easily angered and yells a lot." (Tr. 311). She did not always feel

sociable. (Tr. 312). Prompted to supply information about Plaintiff's abilities, Valencia marked issues with talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id.*). "She is learning disabled [and] she sometimes get[s] angry and it affects whatever she is doing at that time." (*Id.*). She could pay attention "for as long as it takes," though "she is not able to retain a lot of information." (*Id.*). She could not follow written instructions because she "does not read well," but she was able to follow spoken instructions "up to the point of what she can remember." (*Id.*). She did not handle changes in routine well. (Tr. 313).

### ii. Plaintiff's Testimony at the Administrative Hearing

As the hearing began, Plaintiff's attorney clarified the issues in the instant case, noting "there is kind of a question in the record as to some of her diagnoses." (Tr. 38). Plaintiff lived in a two-family flat with her daughter, her friend, and her friend's mother and child. (Tr. 41). She could take the bus to get around, though she typically rode with her friend. (Tr. 42). She finished schooling up to the eleventh grade. (*Id.*). While in school, she was placed in special education classes. (Tr. 43). She could read and write simple words. (*Id.*). She felt she was disabled because "I can't read or spell." (Tr. 44). In addition, she took medication for a cyst in her stomach and had complained to her doctor about pain and numbness in her arm and arm [sic]. (Tr. 44-45). Sitting at the hearing, she ranked her pain a six in severity out of ten. (Tr. 46).

Each day, Plaintiff played with her daughter and watched television. (Tr. 47). She remained able to prepare her daughter's meals and dress her. (*Id.*). Plaintiff also performed various chores around the house, such as tidying up the floor and microwave cooking. (Tr. 47). She had no issues with personal care, though she did not shower or take a bath every day. (Tr. 48). Due to sleep apnea, she had trouble sleeping. (Id.). She could lift her thirty nine pound daughter up on occasion. (Tr. 49). Others needed to remind her to bathe and change her clothes "[b]ecause I be forgetting, and I play, and watch TV." (Tr. 52). "Every day, all day" she experienced aural and visual hallucinations. (Tr. 53-54). "I see people that's in the ground." (Tr. 54). She did not take medication for this condition because "my preacher say that's a gift from God." (Tr. 57). Asked to describe her depression symptoms with specificity, Plaintiff said "I get angry a lot" because "whatever happens to me, it keep playing back and forth in my head." (Tr. 56). She did not like to be around other people "[w]hen I have my days," which occurred about three times a week. (Tr. 57). "Sometime I just want to be left alone. I just want to be around my daughter, and my friend and her daughter. I don't like being around lot of people, or too much noise." (Tr. 58).

### iii. The VE's Testimony at the Administrative Hearing

The ALJ's first hypothetical posed an individual "able to work at . . . all levels of exertion, but is limited to simple, routine, repetitive tasks without strict production demands, and occasional interaction with coworkers and the general public. Would the hypothetical person have any jobs?" (Tr. 60). The VE indicated that "unskilled work across several exertional levels" would exist for such an individual, including: "office cleaner" (more than 200,000 jobs in the national economy); "hand packager" (more than 100,000 jobs in the national economy); and "bunch hand" (more than 200,000 jobs in the national economy). (Tr. 60-61).

The second hypothetical was the "same as hypothetical one, but the person would also have the ability to change from a standing to a seated position, or vice versa, for one to two minutes every hour, two hours without interference with work products." (Tr. 61). Such a person, suggested the VE, could perform hand packager and bunch hand jobs as before, but could no longer perform the office cleaner job. (*Id.*). Other examples existed as well, including: "small products assembler" (more than 100,000 jobs in the national economy") and "security monitor" (more than 120,000 jobs in the national economy). (*Id.*).

The ALJ's third hypothetical was the "same as hypothetical two, but the hypothetical person would be off task 20 percent of the work day, excluding normal breaks, due to lack of concentration, and the effects of medication. Would the hypothetical person be able to perform any of the jobs that you've indicated?" (Tr. 62). At this, the VE noted that such an individual could not maintain competitive full-time employment. (*Id.*).

### STANDARD OF REVIEW

The Court reviews "specific written objections" to a Magistrate Judge's Report and Recommendation on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c). Vague, generalized objections are not entitled to a *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.*

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F.Supp. 2d 743, 747 (E.D. Mich. 2004). Similarly, an objection that simply disagrees with the Magistrate Judge's conclusion "without explaining the source of the error" is not a valid objection." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Judicial review of a decision by a Social Security ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). So long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

## ANALYSIS

Plaintiff raises the following Objections to the R&R:

- The Magistrate Judge erred by determining that the ALJ properly assessed Plaintiff's Mental RFC;
- The Magistrate Judge erred by concluding that the ALJ had no duty to obtain an updated medical opinion; and
- The Magistrate Judge erred by finding that the ALJ's decision was supported by substantial evidence.

### I.     The ALJ's assessment of Plaintiff's Mental RFC

Plaintiff faults the Magistrate Judge for her conclusion that the ALJ properly discussed Plaintiff's mental limitations in the RFC finding under SSR 96-8p and SSR 85-15.

SSR 96-8p provides:

[N]onexertional capacity must be expressed in terms of work-related functions . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

Similarly, SSR 85-15 states:

The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

These regulations require the ALJ to consider the claimant's mental capacities. *Delgado v. Comm'r Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002). The ALJ must

discuss the medical evidence and explain the basis for the RFC determination. *Id.* at 548.

The ALJ evaluated neither SSR 96-8p nor SSR 85-15, nor was there any explanation for the cursory conclusion that Plaintiff should be "limited to occasional interaction with coworkers and the general public." (Tr. 25). The ALJ did not explain how Plaintiff's ability to do certain, personal tasks – such as care for her daughter, prepare meals, do housekeeping, and go shopping with friends – translate to a workplace setting. It is unclear to the Court how an ability to complete these personal tasks showcases Plaintiff's ability to understand, carryout, and remember instructions; make sound work-related decisions; "respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." SSR 96-8p.

"[I]t is unclear on what the ALJ based her ultimate RFC conclusion, and she draws no accurate and logical bridge to instruct the Court of her reasoning." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017). The Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision falls to provide an accurate and logical bridge between the evidence and the result." *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044 (E.D. Mich. Jan. 6, 2011); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) (an appellate record must "permit meaningful review" of the ALJ's application

of the rules). Therefore, Plaintiff's objection to the R&R on this point is **SUSTAINED**.

## II. The ALJ's duty to obtain an updated medical opinion

Social Security Ruling 96-6p requires an updated medical expert opinion when either

> (1) there is evidence of symptoms, signs and findings that suggest to the ALJ . . . that the applicant's condition may be equivalent to the listings; or (2) when additional medical evidence is received that '*in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding*' that the impairment does not equal the listings.

*Kelly ex rel. Hollowell v. Comm'r of Soc. Sec.*, 314 Fed. Appx. 827, 830 (6th Cir. 2009) (quoting SSR 96-6p, 1996 WL 374180 (July 2, 1996) (emphasis added)).

Plaintiff generally alludes to her "numerous severe impairments" without specifically explaining how the record evidence would show that she qualified under one of the listings, or that the ALJ believed the records may have changed the medical experts' findings. *See Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 723 (6th Cir. 2012); *Freeman v. Comm'r of Soc. Sec.*, 14-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015). Accordingly, this objection is **OVERRULED**.

## III. Whether the ALJ's findings are supported by substantial evidence

As explained previously, the ALJ's findings with respect to Plaintiff's mental RFC do not permit the Court "to trace the path of [her] reasoning." *See Stacey v. Comm'r of Soc. Sec.*, 451 Fed.Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*,

55 F.3d 300, 307 (7th Cir. 1995)). Because the RFC determination in this matter is not supported by substantial evidence, a remand is necessary.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Report and Recommendation [16] is **ADOPTED IN PART.** Plaintiff's Objection to the Report and Recommendation [17] is **SUSTAINED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [15] is **GRANTED IN PART**. Plaintiff's Motion for Summary Judgment [13] is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED**.

Dated: August 8, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge